24

(No. 35941.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MACON MARTIN, Plaintiff in Error.

*Opinion filed September 22, 1961.*

GILBERT FELDMAN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and LEO F. POCH, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

Macon Martin comes here on writ of error from the criminal court of Cook County when, on a bench trial, he was found guilty of robbery and armed robbery and given a sentence of 3 to 7 years in the Illinois penitentiary.

On this review defendant contends that there are many phases of the State's proof that are so unsatisfactory that they project a reasonable doubt of his guilt. Since the weight

and credibility of the evidence is of controlling importance, we deem it appropriate to present a complete evidentiary picture.

On August 21, 1958, at 1:30 P.M. two men entered a walk-in type bakery company truck and, after a struggle with the driver, robbed him of $180. Joseph Herick, the driver of the truck, closed the door and held one robber captive until the other robber returned to the truck and forced his release. Witnesses to the robbery alerted patrolmen, Henry Carr and Edward Hogan, who arrested the released robber only two blocks away. Then the police sent out a "wanted" message to all Chicago police stations stating that Macon Martin was wanted. Herick pursued the other robber, who had the money, until he himself became exhausted, then he went in to the nearby Monroe police station and made a report of the crime.

It was not until November 4, 1958, that defendant Martin was arrested in connection with the Sasi murder, a highly publicized slaying mystery. That evening, he appeared in a show-up with three other men. Herick viewed the men but was not sure of his identification, stating that he would prefer to see them in the daytime. The following day he made a positive identification of the defendant as one of the two robbers.

The defendant agreed to take a lie-detector test provided the interrogation would be confined to the Sasi murder. This test was administered by officer John Griffin at the Central police station. Officer Fred Jones testified that defendant, when answering a question propounded by the polygraph technician, admitted that he and Garner were the participants in the Herick robbery.

Only the defendant testified for the defense. He denied any involvement in the questioned robbery, and denied that he admitted to the polygraph technician that he was one of the robbers in the bakery truck occurrence of August 21, 1958.

Defendant argues here that the testimony of the truck driver, the sole identifying witness, was vague, inconsistent, contradictory and wholly unsatisfactory; that a fair analysis of it leads to the conclusion that it is unconvincing; and that it is unsafe to predicate a guilty finding upon it. Also, he attacks the credibility and the probative value of the polygraph testimony; first, because there were other officers who allegedly overheard this test but were not called to testify by the State, and, second, because the polygraph examiner, after learning from the defendant of his admitted participation, did not deem it important to elicit from the defendant further details of the robbery. In view of the fact that the polygraph interview was primarily concerned with the Sasi murder, it is understandable why the technician did not pursue the robbery case with greater vigor.

Since the defendant flatly denied officer Jones's testimony that he admitted involvement with Garner in the Herick robbery during the polygraph examination, it seems that if there were other officers present who heard the defendant make such a damaging admission, the State could have strengthened their case by submitting corroborative evidence.

The defendant also points out a contradiction in the testimony of the police and that of the robbery victim. The police were sure that Herick had given them a full description of the robbers, but Herick said that he had given them no details or that he could not remember whether. or not he had done so.

Obviously the defendant has pointed out weaknesses in the proof adduced by the prosecution, but this does not necessarily foreclose the possibility that the defendant was proved guilty beyond a reasonable doubt. The prosecuting witness was attacked in the day time. He had every opportunity to view his assailant on that occasion, and later, when the defendant returned to assist his confederate, he again had an opportunity to study the features of the defendant.

The trial court was justified in his determination that Herick was not mistaken in his identification.

This is another of the many cases where the trier of facts is in a peculiarly advantageous position to ascertain the truth. The trial court was convinced beyond a reasonable doubt that Joseph Herick and officer Jones were to be believed. He had an opportunity to study their appearance, demeanor, attitude, manner of testifying, *etc.* Also he was able to adjudge the candor, honesty and forthrightness of each witness. What is said is important but how it is said is frequently more important. There are avenues that lead to the truth that are not available to a reviewing court having before it only the printed page. The judgment is affirmed.

*Judgment affirmed.*